DA 10-0477

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 87N

IN THE MATTER OF C.J.,

A Youth in Need of Care.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN-09-38
Honorable Robert L. Deschamps, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Joslyn Hunt, Chief Appellate Defender, Matthew M. Wilcox,
Assistant Appellate Defender, Helena, Montana

For Appellee:

Steve Bullock, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana

Kimberly Dudik, Assistant Attorney General, Missoula, Montana

Fred R. Van Valkenburg, Missoula County Attorney,
Missoula, Montana

Submitted on Briefs:  March 29, 2011

Decided:  April 20, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      C.J. is the daughter of L.S.J. (mother) and C.E.J. (father). She was born eleven weeks early, and required hospitalization for nearly two months. The Department of Public Health and Human Services intervened when hospital staff became concerned that L.S.J. and C.E.J. would not be able to provide a safe environment for the child. Concerns arose due to C.J.'s special needs as a result of being born prematurely and the Department's previous interaction with L.S.J. during involuntary termination proceedings involving her first two children. The Department filed petitions on July 22, 2009, to adjudicate C.J. as a Youth in Need of Care and to terminate L.S.J.'s parental rights, and took custody of C.J. after her discharge from the Neonatal ICU in August. Over the course of several hearings, L.S.J.'s parental rights to C.J. were terminated, and a Phase I treatment plan was approved to allow for the possibility that C.E.J. could parent C.J. on his own. This Court subsequently affirmed the termination of L.S.J.'s parental rights. *In re C.J.*, 2010 MT 179, 357 Mont. 219, 237 P.3d 1282.

¶3      C.E.J. initially objected to any plan that would require him to separate from L.S.J. During a hearing on October 27, 2009, to discuss the proposed treatment plan, counsel

2

for C.E.J. objected that the plan forced a "Catch-22" on him:  he would be forced to end his relationship with either L.S.J. or his daughter.  In February 2010, the court approved the Department's proposed Phase II treatment plan, making only minor changes to the initial plan.  This plan, which is the relevant plan in this appeal, provided that reunification between C.E.J. and C.J. would be considered if C.E.J. could demonstrate that he could parent independently, including providing a safe environment for C.J., obtaining housing separate from L.S.J., getting his GED, securing employment, working with Department personnel to learn parenting skills, and attending weekly progress meetings and therapy sessions.  During a hearing on the plan on February 26, 2010, despite the unmodified requirement that he separate from L.S.J., C.E.J. agreed to follow the court's plan to preserve his parenting rights to C.J.  C.E.J.'s counsel requested that he be allowed 90 days to separate from L.S.J. and demonstrate compliance with the plan.  The Department agreed to the request.

¶4     In June or July 2010, the court obtained a copy of a marriage license between C.E.J. and L.S.J. and a newspaper announcement to the same effect.  At a court-initiated hearing on July 13, the court made clear that it considered C.E.J. to have made his decision to continue his relationship with L.S.J. rather than with C.J., and scheduled a hearing on termination of C.E.J.'s parental rights for August 4, 2010.

¶5     At the August 4 hearing, the court heard testimony from numerous social workers and professionals involved with the case.  Testimony was given as to each task required by the treatment plan.  It was clear that C.E.J. had failed to comply with a large majority

of the tasks assigned under the treatment plan. He failed to attend weekly therapy sessions, did not follow recommendations of his neuropsychologist, attended fewer than half of supervised visits with C.J., did not obtain separate housing from L.S.J., could not provide proof of employment, did not attend required meetings with Department personnel to discuss his progress, refused to provide his contact information, and demonstrated no improvement in parenting skills. While there were elements of the plan with which he did comply—such as following court orders regarding contact with C.J.— he indisputably failed to successfully complete any of the three principal "tasks" under the treatment plan. The court entered an order on September 1, 2010, terminating C.E.J.'s parental rights with respect to C.J., and awarding permanent custody to the Department. C.E.J. timely appealed.

¶6     C.E.J. contends that the District Court's termination of his parental rights unconstitutionally required him to abandon his wife in order to gain custody of his daughter. He observes that the right to marry is a fundamental liberty interest. *Loving v. Virginia*, 388 U.S. 1, 12, 87 S. Ct. 1817, 1824 (1967). C.E.J. also asserts that his right to care for and maintain custody of his child is a fundamental liberty interest and has been infringed by the court's order. *In re K.J.B.*, 2007 MT 216, ¶ 22, 339 Mont. 28, 168 P.3d 629. He cites *Simmons v. U.S.*, 390 U.S. 377, 88 S. Ct. 967 (1968), for the proposition that he cannot be forced to choose between two constitutionally protected rights.

¶7     A court's decision to terminate a parent's legal rights to a child is not a decision made lightly. *In re D.V.*, 2003 MT 60, ¶ 26, 316 Mont. 282, 70 P.3d 1253. Therefore,

4

we will presume that a district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690. We have recognized on numerous previous occasions that "in determining whether to terminate parental rights, 'the district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children,' thus 'the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights.' " *Id.* (citing *In re J.W.,* 2001 MT 86, ¶ 8, 305 Mont. 149, 23 P.3d 916).

¶8      There can be no argument that C.E.J. possesses fundamental liberty interests in his right to marry and his right to maintain custody of his child. These rights are constrained, however, by the child's constitutional right to be free from abuse and neglect. The balance is struck in the laws governing termination of parental rights, which include a statutory mandate that primary consideration must be given to the needs of the child. Section 41-3-609(3), MCA; *In re K.J.B.*, ¶ 24; *In re T.S.B.*, 2008 MT 23, ¶ 19, 341 Mont. 204, 177 P.3d 429. C.E.J.'s constitutional rights to marry and to parent his child are not absolute, and must give way when in direct conflict with C.J.'s needs and rights. Section 41-3-101(7), MCA; *State v. Skurdal*, 235 Mont. 291, 294-95, 767 P.2d 304, 306-07 (1988). The law expressly contemplates removal of the perpetrator of alleged abuse or neglect from the home to allow the child to remain in the home. Section 41-3-427(2)(d), MCA. C.E.J. does not challenge the constitutionality of any of these statutes. We have

approved treatment plans for one parent along very similar lines in the past when the other parent's presence in the child's life creates a "substantial risk of harm to the [child's] health and welfare." *In re K.C.H.*, 2003 MT 125, ¶ 25, 316 Mont. 13, 68 P.3d 788.

¶9 Furthermore, it is clear that C.E.J.'s choice to marry L.S.J. was by no means the deciding factor in the District Court's decision. The court may terminate parental rights when the constitutional safeguards protecting those rights have been respected: a youth has been adjudicated to be in need of care, and a court-approved treatment plan has not been complied with or has not been successful. Section 41-3-609(1)(f)(i), MCA. In this case, the court specifically examined C.E.J.'s performance on every task required of him by the treatment plan, and found that his performance was unsatisfactory on the vast majority of the tasks assigned. Complete compliance with a treatment plan is required, as opposed to partial compliance or even substantial compliance. *In re N.A.*, 2002 MT 303, ¶ 36, 313 Mont. 27, 59 P.3d 1135. C.E.J. does not challenge that he failed to comply with the treatment plan. Tension between competing rights does not trigger an automatic constitutional violation, and in light of C.E.J.'s clear failure to comply with his treatment plan, his constitutional rights were not violated.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. We conclude the District Court's findings of fact are supported by substantial evidence and

6

the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶11	The District Court's termination of C.E.J.'s parental rights is affirmed.


/S/ BETH BAKER


We concur:


/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE